**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
J&D FINANCIAL (WEST COAST)                     :
CORPORATION,                                   :
                                               :
                                               :
                        Plaintiff,             :
                                               :          Case No.: 25-cv-4680
            -against-                          :
                                               :
KIEWIT CORPORATION, and                        :
KIEWIT POWER CONSTRUCTORS CO.,                 :
                                               :
                                               :
                        Defendants.            :
-----------------------------------------------------------------x
```

## COMPLAINT

J&D Financial (West Coast) Corporation ("**J&D**"), a California corporation, by and through the undersigned counsel, hereby files this Complaint and sues Defendants Kiewit Corporation ("**Kiewit Corp.**"), a New Jersey corporation and Kiewit Power Constructors Co., ("**Kiewit Power**") a Delaware corporation, and in support thereof states:

## PARTY ALLEGATIONS

1.    J&D is a California corporation, with its principal place of business located in California.

2.    Kiewit Corp. is a Delaware corporation, with its principal place of business in New Jersey.

3.    Kiewit Power is a Delaware corporation, with its principal place of business in Nebraska.

## ALLEGATIONS APPLICABLE TO JURISDICTION AND VENUE

4.    This Court has original subject matter jurisdiction over the claims in this matter, pursuant to 28 U.S.C. § 1332(a). J&D is a citizen of the State of California due to it having been formed as a California corporation, having its principal place of business in California.

5.    Kiewit Corp is a citizen of the States of Delaware and New Jersey due to it having been formed as a Delaware corporation and having its principal place of business in New Jersey.

6.    Kiewit Power is a citizen of the States of Delaware and Nebraska due to it having been formed as a Delaware corporation and having its principal place of business in Nebraska.

7.    The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332(a).

8.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all claims that are so related to the claims in the action within its original jurisdiction that they form part of the same case or controversy.

9.    Venue is proper in this Court pursuant to either (i) 28 U.S.C. §1391 (b)(1) in that this action is filed in a judicial district in which the defendant resides, and/or (ii) 28 U.S.C. §1391 (b)(2) in that this action is filed in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated and/or (iii) based on the contract terms whereby the parties to the contract giving rise to the amounts owing contains a mandatory choice of venue provision establishing venue in the State of New York, and the city of New York.

## ALLEGATIONS APPLICABLE TO CONDITIONS PRECEDENT

10.    All conditions precedent to the bringing of this action have been performed, excused, and/or waived. Whatever number of months was contained in the Services Agreement as a period

of time or term under which the Services Agreement would be operative ("**Term**") such Term was either altered by agreement of the parties or waived to the extent any such Term of the Services Agreement expired prior to September 1, 2024.

11.    The Services Agreement contains a Dispute Resolution Procedure in Section 4.5 which requires that any "Dispute"[1] that cannot be resolved informally authorizes a party to escalate the Dispute to "senior executive management", however, such provision expressly provides that "In no event shall this Section 4.5 be construed to limit either party's right to take any action under this Agreement, including Contractor's rights under Section 4.5." Moreover, Subsections (ii) and (iii) of this provision also provide the following:

ii) In the event such senior executives are not able to resolve the Dispute within ten (10) Days after receipt of the notice set forth in Section 4.5 (i), then either Party may request a mandatory, nonbinding mediation of the Dispute by providing written notice to the other Party requesting such mediation, which shall be held in New York, New York, and shall be conducted by a single mediator mutually selected by the Parties. If the Parties are unable to agree upon a mediator within ten (10) Business Days after the date written notice of mediation is received, either Party may petition the American Arbitration Association in New York, New York ("AAA") for the appointment of a mediator, and the mediation, including the selection of the mediator, shall occur pursuant to the AAA's Construction Industry Arbitration Rules and Mediation Procedures then in effect. Mediation is an absolute condition precedent to litigation, except (i) to the extent necessary to avoid statute of limitation issues, or (ii) if another Dispute is already subject to litigation pursuant to this Section 4.5. (iii) Any Dispute not resolved through mediation within sixty (60) Days after either Party's receipt of notice requesting mediation shall be decided by litigation pursuant to this Section 4.5 (iii). Litigation of any Dispute shall be brought exclusively in (i) state court within New York City, Borough of Manhattan, State of New York (except to the extent such selection is prohibited by applicable law, in which case, in a permissible state court in the state of New York) or (ii) the United States District Court of the Southern District of New York. Each Party hereby consents to personal jurisdiction in any legal action, suit, or proceeding brought in (i) any state court in New York City, Borough of Manhattan, State of New York (except to the extent such selection is prohibited by applicable law, in which case, in a permissible state court in the state of New York), or (ii) the United

---

[1] The term "Dispute" is defined in Section 4.5 of the Services Agreement to mean "any claim, dispute, controversy, difference, disagreement, or grievance (of any and every kind or type, whether based on contract, tort, statute, regulation or otherwise) arising out of, connected with or relating in any way to this Agreement (including the construction, validity, interpretation, termination, enforceability or breach of this Agreement."

States District Court of the Southern District of New York. Each Party hereby consents to personal jurisdiction in any legal action, suit, or proceeding brought in (i) any state court in New York City, Borough of Manhattan, State of New York (except to the extent such selection is prohibited by applicable law, in which case, in a permissible state court in the state of New York), or (ii) the United States District Court of the Southern District of New York, having subject matter jurisdiction, and irrevocably waive, to the fullest extent permitted by applicable laws and the law of the state of New York, any claim or any objection it may now or hereafter have, that venue or personal jurisdiction is not proper with respect to any such legal action, suit, or proceeding brought in such a court in or having jurisdiction over New York City, Borough of Manhattan, State of New York, including any claim that such legal action, suit, or proceeding brought in such court has been brought in an inconvenient forum. Each party further consents to the service of process out of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such party at its address specified herein for the giving of notices, or by such other notice given in accordance with the rules and procedures of such courts. THE PARTIES VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH.

Assuming that Section 4.5 of the Services Agreement are applicable to and/or control the claims of J&D, each of the conditions precedent to litigation contained in subsections (ii) and (iii), was either waived by Kiewit or J&D is excused from having to perform such condition(s) due to Kiewit's refusal to proceed in good faith and/or in accordance with that provision as requested by J&D.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. The Factoring Relationship between J&D and Kiewit's Security Guard Company Westech Security and Investigation Inc.

12.    J&D is in the factoring business, which business involves, *inter alia*, the purchasing of accounts ("**Accounts**")[2] from businesses ("**Factoring Clients**") with whom it has formed a

---

[2] The term 'Accounts' is intended to have the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in New York's version of the UCC, and the term means "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold…, (ii) for services rendered." McKinney's Uniform Commercial Code § 9-102 (a)(2).

contractual relationship, the terms of which are generally wholly or partially contained in invoices.

13.   Within the factoring industry, the entity that purchases Accounts is commonly referred to as the "Factor" or "Purchaser" of Accounts, in this case J&D. The entity from whom the Accounts are purchased is commonly referred to as the "Factoring Client" or "Seller," in this case Westech Security and Investigation Inc. ("**Westech**"). The Factoring Client's customer for whom the Seller has performed service(s) or sold good(s) and to whom an invoice is ordinarily issued to evidence the terms of sale and request payment is commonly referred to as the "Customer" or "Account Debtor,"[3] in this case Kiewit Corp. and Power Constructors.

14.   On or about August 11, 2020, Westech entered into a written agreement with J&D titled "Factoring and Security Agreement" (the "**Factoring Agreement**"). A true and correct copy of the Factoring Agreement, but for any terms or provisions which are deemed confidential and which have accordingly been removed or redacted, is attached hereto as **Exhibit A**.

15.   Pursuant to the Factoring Agreement, Westech contractually offered to sell to J&D Accounts principally arising from Westech's sale of security guard services performed ("**Security Services**") and provided to its customers, including Kiewit Power. *See* **Exhibit A**, § 2.

16.   Westech was at all relevant times a company that provided Security Services to its customers.

17.   J&D, in connection with the Factoring Agreement, purchased Accounts from Westech that it elected to purchase in connection therewith, including all of Westech's rights, title to and interest in and in respect to all Accounts purchased (the "**Purchased Accounts**") and in exchange, J&D made purchase price payments to Westech.

---

[3] The term 'Account Debtor' is intended to have the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in New York's version of the UCC and the term means "a person obligated on an account." McKinney's Uniform Commercial Code § 9-102 (a)(3).

18.   In addition, in order to secure all of Westech's Obligations[4] owing to J&D under the Factoring Agreement, Westech granted to J&D a first priority security interest in various assets of Westech identified in the Factoring Agreement as collateral, which collateral included, among other things, all of Westech's Accounts, together with other assets and all Proceeds[5] thereof (collectively, the "**Collateral**"). *See* **Exhibit A**, Exhibit 1.1 §1.1.42.

19.   J&D's security interest attached to the collateral pursuant to and in accordance with Uniform Commercial Code Section 9-203.

20.   On April 30, 2019, J&D duly perfected its first priority ownership interest in the Purchased Accounts and its first priority security interest in all Collateral, including all Accounts, by causing the filing of a UCC-1 Financing Statement to be filed with the New York Secretary of State which was assigned File No. 201904305542271. Thereafter, due to an asset acquisition agreement between J&D and its affiliate entity, J&D Financial Corporation, a Florida Corporation, J&D filed a UCC-3 Form Financing Statement evidencing the assignment of J&D Financial Corporation's security interest and on November 3, 2023, J&D timely filed a UCC-3 Form Financing Statement evidencing the continuation of the previously filed Initial Financing Statement. A true and correct copy of these Financing Statements are attached hereto as **Exhibit B**.

---

[4] The term "Obligation" is defined in Section 1.1.42 in Exhibit 1.1 of the Factoring Agreement and means, *inter alia*, "all present and future monetary and non-monetary obligations owing by Client… to Factor..."

[5] The term 'proceeds' is intended to have the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in New York's version of the UCC, and the term means "except as used in Section 9-609(b), means the following property: (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral; (B) whatever is collected on, or distributed on account of, collateral; (C) rights arising out of collateral; (D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or (E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral." McKinney's Uniform Commercial Code § 9-102(a)(64).

21.  Until all of the Obligations under the Factoring Agreement have been paid in full, whether or not Westech is in default under the Factoring Agreement, Westech expressly and irrevocably granted a power of attorney to J&D to exercise the authority to do each of the following:

> 10.1 Client grants to Factor an irrevocable power of attorney authorizing and permitting Factor, at its option, with or without notice to Client, to do any or all of the following: (a) Endorse the name of Client on any checks or other evidences of payment whatsoever that may come into the possession of Factor regarding Purchased Accounts, non-Purchased Accounts or any Collateral; (b) Pay, settle, compromise, prosecute or defend any action, claim, conditional waiver and release, or proceeding relating to any Accounts or Collateral; (c) Upon the occurrence of an Event of Default. change the address for delivery of mail addressed to Client to such address as Factor may designate: (d) File any Financing Statement deemed necessary or appropriate by Factor to protect Factor's ownership interest and/or Security Interest in and to the Accounts or Collateral, or under any provision of this Agreement; and (e) To do all other things necessary and proper in order to carry out Factor's reasonable expectations under this Agreement. The authority granted 10 Factor herein is irrevocable until a Complete Termination[6] has occurred.

> 10.2 Client authorizes Factor to accept, endorse and deposit on behalf of Client any checks tendered by an Account Debtor "in full payment" of its Obligation to Client. Client shall not assert against Factor any claim arising therefrom, irrespective of whether such an action by Factor effects an accord and satisfaction of Client's claims, under Cal. Com. Code §3311.

22.  As owner of the Purchased Accounts and in respect to those non-Purchased Accounts in which J&D holds a duly perfected first priority security interest and until a Complete Termination has occurred which as of the filing of this Complaint has not yet occurred, the Factoring Agreement establishes J&D's right to exclusive dominion and control over all proceeds of any Purchased Accounts and any non-Purchased Accounts as well.

---

[6] The term "Complete Termination" is defined in Section 1.1.13 in Exhibit 1.1 of the Factoring Agreement to mean, "Complete Termination occurs upon satisfaction of the following conditions: Payment in full of all Obligations of Client to Factor and Factor's issuance of a UCC termination statement; if Factor has issued or caused to be issued guarantees, promises, or letters of credit on behalf of Client, acknowledgment from any beneficiaries thereof that Factor or nay other issuer has no outstanding direct or contingent liability therein; and Client has executed and delivered to Factor a general release in the form of Exhibit 20.8 affixed hereto."

23.  The Factoring Agreement establishes J&D's right to dominion and control over all payments made by any of Westech's customers to whom Security Services were provided. More specifically, sections 9.1, 9.2 and 9.3 in the Factoring Agreement read as follows:

9. 1 Upon Factor's request, Client shall notify all Account Debtors and take other necessary or appropriate means to ensure that **all of Client's Accounts, whether or not actually purchased by Factor, shall be paid directly to Factor or Factor Assignee at a remittance address as designated by Factor. Factor shall have the right at any time, either before or after the occurrence of an Event of Default and without notice to Client, to notify each Account Debtor of Factor's or factor Assignee's ownership interest and Security Interest in the Purchased Accounts and non-Purchased Accounts, respectively, and to direct such Account Debtors to make payment of all amounts due or to become due directly to Factor or Factor Assignee**.

9.2 **Factor, as the sole and absolute owner of the Purchased Accounts, shall have the sole and exclusive power and authority to collect each such Purchased Account, through legal action or otherwise, and Factor may, in its sole Business Judgment, settle, compromise, or assign (in whole or in part) any of such Purchased Accounts, or otherwise exercise, to the maximum extent permitted by applicable law, any other right now existing or hereafter arising with respect to any of such Purchased Accounts**. Client hereby grants to Factor the irrevocable authority to notify, orally and in writing, any of Client's creditors, including any banking institution whom Factor believes Client has or may have established a relationship, of~ *inter alia,* Factor's ownership of and sole right to collect the Purchased Accounts and to demand turnover of' same, and Factor will be held harmless from any claims or damages of any kind that might arise for having done so Client shall also be deemed to have unconditionally assigned to Factor and Factor shall have the sole and exclusive right to seek damages and receive all payments due in connection with each and every underlying contract or other form of agreement between Client and any Account Debtor, whether or not such underlying agreement:. an.: in respect to a Purchased Account or non-Purchased Account and regardless of whether or not Factor is identified as an intended third-party beneficiary.

9.3 **Should Client receive payment of all or any portion of any Purchased Account or non- Purchased Account after any Event of Default, Client shall immediately notify Factor of the receipt of the payment, hold said payment in trust for Factor separate and apart from Client's own property and funds, and shall deliver payment to Factor within two (2) business days in the identical form in which received**. Should Client receive any check or other payment instrument with respect to a Purchased Account or Account and fail to surrender and deliver to factor said check or payment instrument withing two (2) business days, Factor shall be entitled to charge Client a Misdirected Payment Fee to

compensate Factor for the additional administrative expenses that the Parties acknowledge is likely to be incurred as a result of such breach.

(Bolding Supplied).

24.   Moreover, prior to an event of default, an express trust relationship was established which required Westech, as settlor and trustee, to place all proceeds of Accounts received by Westech "in trust for Factor separate and apart from Client's own property and funds, and shall deliver payment to Factor within two (2) business days in the identical form in which received." *See* **Exhibit A**, § 9.3.

**B.  The Professional Services Agreement between Kiewit Power Constructors Company and Westech in Respect to Which Westech provided Security Guard Services and The Right to Receive Payment of All Accounts Arising in Connection Therewith Were Assigned to J&D**

25.   Westech (as consultant) and Kiewit Power (as client) entered into a Professional Services Agreement dated March 27, 2023 (the "**Services Agreement**"), under which Kiewit Power contracted with Westech so that Westech would provide unarmed security guard personnel and related material such as marked patrol vehicles to a construction site identified as the Champlain Hudson Power Express Project (the "**CHPE Project**"). A true and correct copy of the Services Agreement is attached hereto as **Exhibit C**.

26.   Westech performed Security Services for Kiewit Power in accordance with the Services Agreement.

27.   In connection with each Purchased Account offered for sale to J&D by Westech, which arose from the Security Services provided to Kiewit Power by Westech under the Services Agreement, Westech was required to submit to J&D Schedule(s) of Accounts completed by Westech, containing certain information in respect to invoices Westech offered for sale to J&D (the "**Schedule of Accounts**").

28.   In addition, Westech was required to provide to J&D copies of all invoices that were issued by Westech to Kiewit  Corp. Upon information and belief, Kiewit Corp. and Kiewit Power jointly assumed the role of Account Debtor and further identified themselves to J&D jointly as "Kiewit Financial Group" in connection with electronic transfer payments made on invoices issued by Westech to each of them and each of them assumed responsibility in email communications, including those with Kiewit Corporation's representatives such as a Merav Biton, a senior project attorney for the CHPE Project on behalf of Kiewit Corporation, to timely pay all invoices that were due and owing (hereafter, Kiewit Corp. and Kiewit Power may collectively be referred to as "**Kiewit**").

29.   In accordance with the Factoring Agreement, Westech offered for sale and J&D purchased the following Purchased Accounts which remain unpaid by Kiewit to J&D, as evidenced by invoices issued to Kiewit for the Security Services provided by Westech as follows:

| Invoice Number | Invoice Date | Due Date | Invoice Amount |
|---|---|---|---|
| 2312 | 05/31/2024 | 06/30/2024 | $106, 302.66 |
| 3434 | 06/30/2024 | 07/30/2024 | $205, 419.93 |
| 3901 | 07/31/2024 | 08/30/2024 | $107, 395.40 |
| 4404 | 08/31/2024 | 09/30/2024 | $100,767.73 |
|  |  | **Total Invoice Amount Due:** | **$519,855.72** |

(the "**Matured and Unpaid Invoices**"). The Invoice documentation related to the Matured and Unpaid Invoices is attached hereto as **Exhibits D-1, D-2, D-3 and D-4**.

30.   Article 9 of the Uniform Commercial Code, §9-406, as adopted in New York as McKinney's Uniform Commercial Code § 9-406 ("**Section 9-406**"), states as follows:

**§ 9.406. Discharge of Account Debtor; Notification of Assignment; Identification and Proof of Assignment; Restrictions on Assignment of Accounts, Chattel Paper, Payment Intangibles, and Promissory Notes Ineffective**

> (a)…an account debtor [here, Kiewit] on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor [here, Westech] until, but not after, the account debtor [here, Kiewit] receives a notification, authenticated by the assignor [here, Westech] or the assignee [here, J&D], that the amount due or to become due has been assigned and that payment is to be made to the assignee [here, J&D]. After receipt of the notification, the account debtor [here, Kiewit] may discharge its obligation by paying the assignee [here, J&D] and may not discharge the obligation by paying the assignor [here, Westech]. [7]

(Bracketed information supplied).

31.   In accordance with the Factoring Agreement and as authorized by Section 9-406, each of the above-stated Matured and Unpaid Invoices issued by Westech to the account debtors, Kiewit, contained language that satisfied the requirements of Section 9-406 notifying Kiewit that the right to receive payment of the Matured and Unpaid Invoices had been assigned to J&D and were payable only to J&D. More specifically, each of the Matured and Unpaid Invoices stated:

> THIS ACCOUNT AND THE MERCHANDISE IT REPRESENTS HAS BEEN ASSIGNED TO AND IS PAYABLE ONLY TO: J&D FINANCIAL CORPORATION, C/O ROSENTHAL & ROSENTHAL, INC. P.O. BOX 88926, CHICAGO, IL 60695-1926. (305) 893-0030. ANY CLAIMS AGAINST THIS INVOICE MUST BE MADE PROMPTLY IN WRITING TO ROSENTHAL & ROSENTHAL SPECIFYING DETAILS. NO RETURNS OR ADJUSTMENTS WILL BE RECOGNIZED WITHOUT WRITTEN CONSENT OF ROSENTHAL & ROSENTHAL.

(collectively, "**Invoices Notice of Assignment**")

32.   Since the transmission of the Matured and Unpaid Invoices J&D's lender, Rosenthal & Rosenthal Inc. has relinquished all right, title and interest in the collection of the Matured and Unpaid Invoices to J&D,

33.   According to each of the terms of the Matured and Unpaid Invoices, each of the Matured and Unpaid Invoices has matured; (i) Invoice 2312 was due and owing as of June 30,

---

[7] McKinney's Uniform Commercia Code § 9-406 has not been referenced to imply that J&D seeks to assert any private right of action thereunder, which it is not, instead this statute is being referenced for the purpose of noting the restrictions placed on account debtors, like Kiewit Corp. or Kiewit Power, in respect to its obligation to pay J&D after it received a Notice of Assignment.

2024, (ii) Invoice 3434 was due and owing as of July 30, 2024, (iii) Invoice 3901 was due and

owing as of August 30, 2024 and (iv) Invoice 4404 was due and owing as of September 30, 2024.

34.   J&D has not received payments of any of the sums due on the Matured and Unpaid

Invoices.

35.   Due to Kiewit's receipt of each Invoice Notice of Assignment, and in accordance with

Section § 9-406, and any other applicable statutory and common law, Kiewit could only lawfully

discharge its obligation on the Matured and Unpaid Invoices by remitting payment to J&D.

36.   Despite J&D's exclusive right to receive payment of the Matured and Unpaid Invoices

after Kiewit's receipt of same Kiewit failed and/or refused to pay J&D any amounts for the

Security Services provided by Westech as expressed therein.

## <u>COUNT I</u>

**Action For Breach of Contract to Pay Sums Due on Accounts Assigned to J&D, as Assignee of the Right to Receive Payment, and Non-Dischargeability of any Payments Wrongfully Paid by Kiewit Corp. and/or Kiewit Power on the Matured and Unpaid Invoices**

J&D, as the assignee of the right to receive payment, sues Kiewit Corp and Kiewit Power

for Breach of Contract to Pay Sums Due on the Matured and Unpaid Invoices and as grounds

therefore avers as follows:

37.   J&D realleges and readopts paragraphs 1 through 36 above as if fully alleged herein.

38.   McKinney's Uniform Commercial Code § 9-607 ("**Section 9-607**") states, in relevant

part:

(a) Collection and enforcement generally. **If so agreed,** and in any event after default, **a secured party** [here, J&D]:

(1) may notify an account debtor [here, Kiewit] or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party [here, J&D];

(2) **may take any proceeds to which the secured party [here, J&D] is entitled under 9–315**;

> **(3) may enforce the obligations of an account debtor [here, J&D] or other person obligated on collateral and exercise the rights of the debtor [here, Westech] with respect to the obligation of the account debtor [here, Kiewit] or other person obligated on collateral to make payment or otherwise render performance to the debtor [here, Westech],** and with respect to any property that secures the obligations of the account debtor [here, Kiewit] or other person obligated on the collateral…

(Bolding and brackets supplied).

39. Pursuant to Section 9-607[8], adopted in New York as McKinney's Uniform Commercial Code § 9-607, and any applicable supplemental statutory and common law, and those portions of the Factoring Agreement alleged in this Complaint, J&D, as assignee of the right to receive payment, became entitled to stand in the shoes of Westech in order to collect from Kiewit, as the account debtor, all amounts owed to Westech under the Services Agreement.

40. In accordance with the Services Agreement, Westech materially and substantially fulfilled the Security Services, and in connection therewith, Kiewit became obligated on all Accounts arising under the Services Agreement including, the Matured and Unpaid Invoices, that arose and were issued to Kiewit by Westech for payment for the Security Services.

41. J&D has suffered damages as a result of Kiewit's failure to timely pay J&D all sums due on the Matured and Unpaid Invoices. Moreover, Kiewit Corp. and Kiewit Power are each collectively liable to J&D for all sums due on the Matured and Unpaid Invoices based on Westech's performance of the Security Services under the Services Agreement together with any other invoices issued by Westech to Kiewit on or after the first date of delivery of the Invoices Notice of Assignment to Kiewit, for which payment was not made to J&D and that may be

---

[8] By citing to any of the McKinney's Uniform Commercial Code J&D is not seeking to concede that New York substantive law should serve as the parties choice of law or should otherwise control the subject matter of this case.

discovered through formal discovery taken in this litigation, plus prejudgment interest at the rate(s) prescribed by applicable law.

42.   Kiewit Corp. and Kiewit Power owe J&D the sum of not less than $519,885.72 on the Matured and Unpaid Invoices, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE**, Plaintiff J&D Financial (West Coast) Corporation demands judgment against Defendants Kiewit Corporation and Kiewit Power Constructors Co., jointly and severally, in the amount of at least $519,855.72, plus any other amounts owing to J&D, together with prejudgment interest, costs, and such other relief as this Court deems necessary and proper.

## <u>COUNT II</u>
**Action For Breach of Account Stated Against Kiewit Corp. and/or Kiewit Power on the Matured and Unpaid Invoices**

43.   J&D incorporates by reference paragraphs 1 through 42 as though they were set forth at length herein.

44.   J&D and Westech entered into the Factoring Agreement or about April 11, 2020, under the terms of which Westech offered to sell J&D Accounts principally arising from Westech's Security Services performed and provided to its customers including Kiewit Corp. and/or Kiewit Power.

45.   On or about March 27, 2023, Westech entered into the Services Agreement with Kiewit Power so that Westech could provide unarmed security guard personnel and related material such as marked patrol vehicles for the CHPE Project.

46.   In accordance with the Factoring Agreement, J&D purchased the Purchased Accounts offered for sale by Westech which arose from the Security Services provided to Kiewit Power under the Services Agreement, as evidenced by the Matured and Unpaid Invoices. Moreover, Westech notified Kiewit Corp. and/or Kiewit Power that the right to receive payment of the

Matured and Unpaid Invoices had been assigned to J&D and were payable only to J&D in the Invoices Notice of Assignment.

47.  Kiewit Corp. and/ or Kiewit Power has neither paid nor timely objected to the Matured and Unpaid Invoices issued by Westech.

48.  Kiewit Corp. and/or Kiewit Power explicitly and/or implicitly promised to pay J&D the amount set forth in the Matured and Unpaid Invoices due to its untimely objection to such Matured and Unpaid Invoices.

**WHEREFORE** Plaintiff J&D Financial (West Coast) Corporation demands judgment against Defendants Kiewit Corporation and Kiewit Power Constructors Co., jointly and severally, in the amount of $519,855.72, plus any other amounts owing to J&D, together with prejudgment interest, costs, and such other relief as this Court deems necessary and proper.

## <u>COUNT III</u>

### Action for a Declaratory Judgment Pursuant to 28 U.S.C. § 2201, et sq.

49.  J&D incorporates by reference paragraphs 1 through 48 as though they were set forth at length herein.

50.  The Declaratory Judgment Act, 28 U.S.C. § 2201, et sq., provides that "In a case of actual controversy within its jurisdiction… any court of the United States… may declare the rights and other legal relation of any interested party seeking such declaration, whether or not further relief is sought."

51.  An actual controversy currently exists between J&D, on the one hand, and the Defendants Kiewit Corp. and Kiewit Power, on the other hand, regarding payment of the Matured and Unpaid Invoices and/or bases upon which Defendants Kiewit Corp. and Kiewit Power may seek to assert any recoupment or setoff defenses.

52.   This claim is brought pursuant to the procedural remedy made available to parties (like J&D) under 28 U.S.C. § 2201, 28 U.S.C. § 2202 and Fed. R. Civ. Pro. 57 once subject matter jurisdiction attaches based on the independent basis for subject matter jurisdiction which in this case is diversity of citizenship and the existence of an Article III case or controversy between Kiewit Corp. and Kiewit Power.

53.   This court should exercise its discretion to hear this request for a declaratory judgment since: (i) a determination of this is likely to settle or resolve the issues between J&D and Kiewit Corp. and Kiewit Power, and/or (ii) a determination would serve a useful purpose in clarifying the legal relations at issue, and/or (iii) there is no pending state court action, and (iv) J&D has not engaged in any forum shopping.

54.   On or about March 4, 2024, Westech sought to have its factoring company, J&D, accept Kiewit Corp. as a credit-worthy customer allowing Kiewit Corp's invoices to be sold (i.e., factored) to J&D and having J&D provide immediate working capital financing to Westech.

55.   As of March 4, 2024, Westech's controller, Melanie Brown, informed J&D that the number of times Kiewit Corp. requested Westech to provide security guard personnel was increasing dramatically since the start of the Services Agreement.

56.   By May 2024, J&D had accepted Kiewit Corp. as a credit-worthy customer of Westech and authorized Westech to sell its Accounts owing by Kiewit Corp. to J&D in exchange for Purchase Price payments made by J&D to Westech under the Factoring Agreement.

57.   On May 28, 2024, a company called Infusion Capital Group LLC ("**Infusion**") issued a competing Section 9-406 notice of assignment to Kiewit Corp. asserting that whatever monies were due and owing to Westech should be paid to Infusion instead of J&D. A copy of the notice Infusion sent to Kiewit Corp. is attached as **Exhibit E** (the "**Infusion's Competing Claim**").

58. On or about August 2, 2024, J&D was informed by Westech that Kiewit was concerned due to Kiewit's receipt of a letter from Infusion directing Kiewit to pay Infusion and not J&D.

59. Infusion's Competing Claim was, at best, junior to the senior security interest of J&D but nonetheless caused disruption in the payments Kiewit Corp. was making on all invoices that were purchased by J&D which required J&D to engage the law firm of Ullman & Ullman, P.A. ("**J&D's Counsel**") to transmit a letter to Kiewit Corp. contesting the right of Infusion's Competing Claim and any legal rights under its Section 9-406 notice of assignment and sought to have Kiewit Corp. cease holding up or delaying payments Kiewit Corp. was making on all amounts owing to Westech for Security Services that were provided under the Services Agreement. A copy of the August 13, 2024 letter J&D's Counsel issued to Kiewit Corp. is attached as **Exhibit F**.

60. J&D's Counsel next issued an email sent August 15, 2024 at 11:20 a.m. to Kiewit's representative and its counsel seeking a retraction of Infusion's Competing Claim. A copy of the August 15, 2024, email is attached as **Exhibit G.**

61. On September 4, 2024 at 7:00 p.m. the law firm for Infusion issued an email to Kiewit and copied J&D's counsel advising that " as it pertains to this specific account we withdraw our demand." A copy of the September 4, 2024, email is attached as **Exhibit H.**

62. On September 13, 2024, Kiewit released two (2) payments on Invoices numbered 1303 dated March 31, 2024, in the amount of $89,744.06 and 2182 dated April 1, 2024 in the amount of $93,561.17 and notified J&D that additional invoices were being reviewed for payment but then in a subsequent call that same day notified J&D that Kiewit considered Westech in breach.

63. On September 17, 2024, Kiewit issued a letter to Westech and copied J&D's Vice President and General Counsel advising Westech that Westech had failed to provide Security

Services at four location sites on September 10, 2024, and that Westech notified Kiewit Corp. that Westech was closing its offices and as such that Kiewit was terminating its Services Agreement.

64.    On October 21, 2024, J&D's Counsel issued a letter ("**October 21, 2024 Letter**") addressing the issues raised in its prior letter sent August 13, 2024 and confirming that Infusion had agreed to withdraw its claim to any funds as of September 4, 2024 and further noting that no payments after September 4, 2024, were made to J&D even though the only impediment to making such payments that were made known to J&D , that being Infusion's Competing Claim, had been was resolved. A copy of the October 21, 2024, letter is attached as **Exhibit I.**

65.    In addition to Infusion's Competing Claim, J&D's Counsel identified additional issues in dispute were also identified in the October 21, 2024 Letter which were stated as follows:

> Firstly, Westech's failure to supply security guard services on September 10, 2024, even if a material breach which is very questionable, was legally excused due to Kiewit's prior material breaches by non-payment of the Unpaid Invoices.

> Secondly, even if Westech's breach was not excused as a matter of law, if Kiewit sustained any damages due to Westech's failure to supply guards on September 10, 2024, Mr. Jone's letter failed to address the most critical component of that purported breach; that being the purported quantum of damages sustained and why whatever quantum of damages were sustained due to a single days failure to receive security guard services, or otherwise, may serve as a legal basis to withhold payment of the amount that remains due and owing of $516, 877.71.

66.    On November 6, 2024, Kiewit issued a letter to J&D's Counsel's dated September 17, 2024, admitting that Kiewit was withholding $519,855.72 in payments owing, however, claiming that Kiewit was excused from having to make those payments due to damages Westech caused Kiewit by Westech's failure to provide Security Services on and after September 9, 2024 and that Kiewit had to retain a replacement security guard company. A copy of the November 6, 2024 letter is attached as **Exhibit J**.

67.   On February 12, 2025 J&D's Counsel issued a letter to Kiewit Corp. noting J&D's inability to get Kiewit to communicate and in good faith to resolve the dispute and requested information from Kiewit that was necessary in order to enable J&D to independently evaluate the actual damages that Kiewit claimed to have sustained after Westech closed its operations. The materials requested from Kiewit involved the following:

1. Any and all documents in Kiewit' s possession evidencing an extension of the term of the Professional Services Agreement beyond March 27 (or 29), 2024. This should include, but not be limited to, any amendments to the Professional Services Agreement in writing.

2. The specific date that was used to calculate the "end of the Project," as referenced in your attached letter.

3. A copy of the contract between Kiewit and the replacement security company.

4. The exact methodology Kiewit employed to calculate the $633,274.00 in alleged damages.

5. Copies of all Conditional Waiver and Release Upon Final Payment forms received by Kiewit from Westech or J&D in relation to the services performed, which make up the $519,885.72 that Kiewit has been withholding.

6. Clarification of Mr. Martin Muzzey's role in connection with this dispute.

7. The name, telephone number, and address of the individual with whom Kiewit was communicating at Champlain Hudson Power Express, LLC regarding the Champlain Hudson Power Express Project.

("**Supporting Damages Material Requested From Kiewit**").

68.   J&D requested that Kiewit make the Supporting Damages Material Requested From Kiewit available by February 19, 2025. A copy of the February 12, 2025, letter is attached as **Exhibit K**.

69.   At no time has Kiewit responded to the Supporting Damages Material Requested From Kiewit, or demonstrated any interest to in good faith meet to resolve this dispute or provide J&D with access to any of the Supporting Damages Material Requested From Kiewit.

70.  The controversy that exists between J&D and Kiewit Corp. and Kiewit Power is substantial, immediate and real and there is injury-in-fact due to Kiewit Corp. and Kiewit Power's failure to provide any underlying or supporting documentation including the Supporting Damages Material Requested From Kiewit to establish the basis for their alleged losses due to a purported claim that Westech breached the Services Agreement thereby permitting Kiewit Corp. and Kiewit Power to refuse to pay J&D any of the total amount owing on the Matured and Unpaid Invoices.

**WHEREFORE** J&D seeks a declaration of the rights and duties between the parties for, among other issues that arise in connection with this Court, the following:

1.  Whether J&D is required as a matter of fact or law to satisfy or otherwise comply with the Dispute Resolution Procedure contained in Section 4.5.

2.  Whether J&D has been excused from satisfying or otherwise complying with the Dispute Resolution Procedure contained in Section 4.5 due to Kiewit's conduct.

3.  Whether Kiewit is precluded, whether due to a waiver, estoppel or non-performance due to its lack of good faith and fair dealing with J&D, from requiring J&D's performance of the Dispute Resolution Procedure contained in Section 4.5.

4.  Whether Kiewit may assert any defense that, based on Westech's termination of the business relationship, Westech breached the contract due to Kiewit having failed to timely pay its invoices prior thereto resulting in a material contractual breach of contract excusing Westech's performance and preventing Kiewit from relying on its Supporting Damages Material Requested From Kiewit.

5.  Such other issues that become apparent during the litigation that require a declaration of rights and duties between the parties including, as authorized by Fed. R. Civ. Pro. 57, a speedy hearing and resolution of this Count II.

Dated: New York, New York
      June 4, 2025

                Respectfully submitted,

                KLESTADT WINTERS JURELLER
                SOUTHARD & STEVENS, LLP
                BY: */s/ Brendan M. Scott*
                200 West 41st Street, 17th Floor
                New York, NY 10036-7203
                Telephone: (212) 972-3000
                Facsimile: (212) 972-2245
                Ian R. Winters
                Brendan M. Scott
                Email: iwinters@klestadt.com
                        bscott@klestadt.com

                ULLMAN & ULLMAN, P.A.
                Jared Ullman
                2500 N. Military Trail, Suite 100
                Boca Raton, Florida 33431
                Telephone: (561) 338-3535
                Facsimile: (561) 338-3581
                Email: jared.ullman@uulaw.net
                (Pro Hac Vice Motion to Be Submitted)

                *Attorneys for J&D Financial (West Coast)*
                *Corporation*